24-2871, Rubin v. United States of America. And we'll start with Mr. Rosenberg, and I understand you would like to reserve two minutes for rebuttal? Yes. Thank you, Judge. Very well. You may proceed whenever you're ready. May it please the Court. My name is Jonathan Rosenberg, and I represent the appellant, Louis Rubin. And I thank you all to reserve two minutes for rebuttal, as was mentioned. This case is about a fundamental rule of the road. It's a very simple case. That's the good news. And you don't turn left into oncoming traffic. Maybe it's not so simple. At least, I didn't think it was simple. Well, what I struggle with is, I don't think it's so simple.      I don't think it's so simple. The defendant across the aisle in the case, I think, is the most sympathetic defendant, because he turned left in a way that we all take the gamble on. At the intersection, there was a break. And he couldn't see it all. Right. But he turned left. There was a break. How long was he supposed to wait? He has to wait until it's... There was a van there, and he couldn't see behind the van. You know, he was there, he was looking around, and then he made his turn. My question is, when he made his turn, after he made his turn, and your client was not on the cross street or even close to it at that point, as he started his turn, didn't he then, he then, have the right of way to make his turn and to move on to the street? And that's the fundamental error of the lower court. And my friends across the aisle, this assumption, this factual assumption that goes against all laws of physics and video, that his right of way existed once he decided to make the turn and... No, I think it's once he was in the turn, your client hit the rear portion, the very rear portion of Mr. Valdez's vehicle, not at the nose, suggesting that it was accurate, as the district court found, that the evidence showed the vehicle was well into the intersection and completed the turn. And my concern and the question for you is, in your briefs now, you rely on Section 1141, the vehicle turning left, that says, shall the vehicle that is turning left shall yield the right of way to any vehicle approaching from the opposite direction, which is so close to constitute an immediate hazard. But we can disagree about that. The scooter was going along at a good clip, despite the stopped traffic in the left lane. But you didn't make that argument to the district court, as far as I could see, about 1141. So why should we rely on 1141 now? Well, the common law of New York, and there's cases in New York to support that, but the common law of all traffic throughout the United States is very clear. A person turning left has to yield until they know they can turn left. I don't agree with the way the facts were presented in the lower court at all. I'm not sure that I did, but I saw the tape. And the tape itself shows your client not reducing his speed, not doing anything to address the situation, and, in fact, admitting that this was a surprise to him when he came up to the intersection and barreling going through the intersection or into the intersection at the same speed he'd been traveling all along.  You know, and where visibility was obscured on the left by the white van, and without even a hint of slowing down or being careful of himself. Well, he had no duty to be more careful than follow the law. He had the right of way. He could not have possibly stopped in time at the time of the turn. I mean, I don't think anyone would actually argue that. Are you saying that he has the right of way just to go through an intersection willy-nilly, even though a car is turning and has basically, at the time, made the turn to the point where it's going down in a 90-degree difference with the main thoroughfare that your client was driving? Under New York law, he has that right of way to willy-nilly go at the proper speed through that intersection, just like when we're going down a road, a driveway, a person backing out. We don't have to expect that if we don't see it. He couldn't see it. If I could show from this. Can I show this blown up? How do we know what was the proper speed, though? As Judge Walker has pointed out, the white van and another, at least one other car, was stopped in the left lane, suggesting that there was some impediment in the intersection upcoming. And your client didn't slow down a bit. I don't think there's any dispute that he was speeding. I don't think there's any belief he was speeding or not following the law. I don't know what the speed limit is, but I think he was under the speed limit. He wasn't reducing his speed. He couldn't react. Nobody could react in time. It was under a second, by the way. No, no, no. I'm not talking about reacting to the car in front. I'm talking about approaching the intersection where visibility is obscured. I'm agreeing with you, Judge, that he couldn't react in time to a vehicle turning in. In red, you couldn't even see the black car. You can see by the time he's actually parallel to the white van, I circle. We've seen the video. Okay. Can I ask you? Yeah, it's not possible. Can I ask you, and I'll be curious to hear the other side's view on this, too. One of the things I was struggling to understand, because I hadn't ever really thought about where scooters are allowed to drive before, my understanding is that the scooters are allowed to be on the road and that when there's traffic, they have to hug the right side of whatever lane they're in, right? So, first of all, just confirm whether it is true that it is permissible under New York vehicle traffic laws for a car and a scooter to both be in the same lane at the same time as long as they can fit. I mean, is that? Yes. I assume that's true. Okay. We'll hear from the other side if they disagree. And then my question then is this, and maybe this is or is not a useful analogy, and you tell me whether it is. Let's assume we didn't have a scooter involved, but it was two lanes of traffic and two cars. And the left lane of traffic is the lane of traffic that we see stopped here with the white SUV at the intersection. And they're stopped for whatever reason at the intersection. But the right lane is still moving along, but with cars instead of a scooter. I take it that your argument is that if the left turn were made by the car, as it was by the defendant in this case, and a car just moving at the rate of travel in the right lane had impact, exactly as the scooter did here, hit the back of the car that was turning, that under 1141 clearly it's the left-turning car that's at fault. 100%. He's going to know there are two lanes of traffic. He's got to look out for the other cars. He can't just assume if there's one car stopped, all cars are stopped. And I take it by analogy, you would be arguing given the state of the world now where you can have a bicycle or a scooter in the right side of the lane, even when you see a car stopped, no one should be assuming that all traffic is stopped, that you've got to nose out and see what else is out there. And that's why you have an 1141 problem. Now, that does raise the question that Judge Carney referred to, and I think maybe you can come back to this. Did you preserve that argument, the 1141 argument? I know you're referencing New York common law, but did you raise 1141 before the district court? And if so, can you give us a page citation? I don't think 1141 was directly raised by counsel in the lower court. I don't think it changes a thing on the preservation because it is a fundamental rule of the road. It's like the sky is blue or the sky is not. It's not an arguable. It's very obvious. We know. It codifies a common law concept that is, and I've looked at other states, at every state of the union, probably the world, I would assume, surmise, before turning left. Let's not go that far. But you don't turn into traffic. We know that. You don't turn into oncoming traffic. Can I just back you up for a second? Yes. At least with respect to that analogy I was drawing. Do you think that is the right analogy or am I looking at it wrong? And counsel on the other side can tell me why I think it's flawed. Unfortunately, it's a correct analogy. We don't have to like New York's law, but New York's law, for whatever reason, decided that the motorized scooter, which the less sympathetic individual decides to ride around on, what's amazing is it's the least sympathetic way. The bane of any driver's existence is a secret scooter, this secret bicyclist coming through that intersection, right? He's doing what we all can't stand when we're driving in Brooklyn. Some person pops out of an area we don't expect and New York says you've got to deal with it. They're equal to the car. But that's the law. We don't have to like the law. We don't have to be sympathetic to the guy who was very happily on his scooter with his helmet. But he did it properly. And the driver, who had more time, decided to take the gamble and go left when most of us would never have encountered it. Are you saying the driver saw the scooter before the action?  Not at all. Not at all. I think the driver acted subjectively reasonably. Subjectively, not objectively. Under the law, he broke it. Well, what are we to make of the fact that the scooter hit the very rear part of the vehicle, suggesting that the turn was complete and he was through the intersection? To me, that suggests that the scooter clearly had the last clear chance to avoid the collision. The suggestion makes sense if we don't have the video. The video resolves the suggestion. I watched the video time and time again, going frame by frame by frame. And I would say that the suggestion only works if it's like a car that backs out of a driveway. It will happen. If you're driving down a road, it backs out. You will hit the side. It's the side. The rear side, I guess. There's two halves to the car. So the rear half of the SUV, he hit on it. The rear quarter maybe of the car. I'll go with Your Honor. The rear quarter then of the SUV. But he hit the side of it, the scooter. He clearly is going along and doesn't expect. He just hits the vehicle that goes right in front of him very quickly. The guy turns fast, of course. He has an opening. But when he flew off the scooter, there was nothing. There was just air there. The car was gone at that point. In other words, he hit the rear of the car, behind the wheel, behind the rear passenger wheel, and then flew through the air without his scooter. Yeah, and that's the consequence perhaps of following New York law if you're going to ride a scooter. These things might happen. But he's not negligent. That guy was negligent who made the turn. He had to wait. Sorry, Your Honor. Would your argument then be, if I'm understanding right, you're not asking for summary judgment in favor of your client. You're asking for a jury to determine. It was a fault. Am I right? Just remind me of what the remedy is you're asking. At this point on the record, of course, we'd ask for summary judgment in favor of my client. But if I have to remind myself to look at my reply. Because there could be a comparative negligence issue, right? There certainly is, Your Honor. There certainly is an issue of fact for a jury. The video. I mean, the question, it seems, would be, if you're looking at it from your standpoint, I suppose your argument is, you know, everyone is so close to each other in this intersection. Let's assume we could consider 1141. Was the scooter, quote, so close as to constitute an immediate hazard? And then that might depend on the jury's estimation of, did the scooter have a reasonable opportunity to brake? I don't know what kind of brakes there are on the scooter. Or what the car would reasonably perceive to be the scooter's ability to brake or something like that. And that it's all so close that we can't say as a matter of law whether, basically, the scooter was cut off by the car or whether the scooter was just blasting along too fast regardless and, therefore, would not have appeared to constitute an immediate hazard. Is that sort of the gist of your jury argument? Right. Because I think if people are disagreeing with me or taking the argument that the video is not so clear, it would have to be a jury question as to whether the guy could have stopped in time. To me, it's obvious he could not have. But it would have to be a jury question because I was shocked that the other side took a position against the view of the video. I could not understand that. But you're asking, I'm just looking at the decree, your conclusion. You're asking that the grant of summary judgment be reversed. Sometimes people use the word reverse in different ways. I would typically think reverse means go the exact opposite way and say you should get summary judgment, not the other side, because then you say, at a minimum, they're genuine disputes of material facts. So can I just ask you to be clear about what is the, if you were to run the boards, what are you asking us to rule in your favor? What is your ask? The prudent position would be to send it back for a fact-finding. So to send it back without the summary judgment being, in other words. Fact-finding, you mean? In other words. It's a jury trial. No, a jury trial. A jury trial, a fact-finding by a jury. I'm using different words. What are you asking also in the first instance for a summary judgment in favor of your client? I just want to know what the answer is. Now that I'm hearing disagreement from the video means I'm thinking the jury's got to see it then. I mean, I thought I knew all of what I was talking about here. You can tell us what you want. We're not going to necessarily give it to you. I understand. But what are you asking? The remedy would have to be it goes forward with a fact-finding before a jury. That's the proper remedy in this particular case. That's all I was asking. Okay. Unless there are further questions right now from the panel, are there? No. Then we understand your argument. You've held two minutes for rebuttal, even though we kept you up a little bit. Let's hear from Attorney Cooper for the appellate. Good morning. My name is David Cooper, and I'm the Assistant U.S. Attorney representing the United States in this matter. The issue presented here is a simple one. Did the district court properly grant? Both of you guys think this is very simple, but good luck to both of you. As you all intuited, the video does depict the accident clearly. Before I reference the video, though, I just want to clarify something as to the remedy here that counsel is seeking. He has represented he's seeking fact-finding by a jury. I do want to remind the court this is an FTCA matter. There is no jury trial here. It would go before the district court. It's a bench trial if you were to win. It would be a bench trial if the summary judgment were not. That's good. Thank you. That's helpful. Could you address first whether an argument based on 1141 is waived in your view? In our view, that argument is waived. The rationale for the rule preventing an argument being raised in an appeal for the first time is to prevent surprise. The statutory requirements for 1141 are different from those in Section 1163, which was addressed at the lower court level. I think your brother on the other side would say that this just represents the common law of New York and you don't need the statutory invocation to apply the common law. That being said, Section 1163 and 1141 do frame things differently. One virtue of the rule preventing raising arguments for the first time on appeal is that the district court would not have had the opportunity to weigh in in the first instance to make that application because it was not for the court at that level. So, yes, it is our position that the 1141 argument is waived. So just to remind me, though, some of the cases that you've relied on, I guess I didn't go back to look at this, but some of the cases you relied on, do they rely on 1141? You know, the people stopping at the four-way stop signs and then turning left and then somebody entering the intersection. I mean, is 1141 relied upon by basically incorporation? Because I understand you're relying on New York case law a lot. Correct. Is that premise on these various statutes? And we're not talking about some obscure, bizarre statutes that are found in some obscure, dusty nook of New York laws. I mean, there are only a handful of vehicle traffic laws that apply here. No, that is correct. And some of the main cases we rely on, namely Nose v. DiRamondo and Parole v. Nicholson, either do not reference 1141 specifically or they're phrased as general statements about the state of how traffic should operate. So just take 139, right, which just defines the right-of-way under New York law. Can we consider that in your view, which the district court talked about? So there it says the right-of-way is defined as, quote, the right of one vehicle to proceed in a lawful manner in preference to another vehicle approaching under such circumstances of direction, speed, and proximity as to give rise to danger of collision unless one grants precedence to the other. So that talks about giving rise to danger of collision. How would you respond to the argument that that's really a rephrasing of the principle in 1141 that if you're turning left, you can turn left unless someone's already in the intersection or another vehicle is so close as to constitute an immediate hazard? Isn't it really a statement of the same principle? It could be read that way. I just do want to note that as far as Section 139 goes, that was raised in our argument at the lower court level. It would have been before the court level. But the district ruled on it, so now we're reviewing it one way or the other, right? Yes. I mean, even if they hadn't raised it and nobody raised it, if the judge says this is the basis for my argument, it's sort of before us now, no? I would not disagree with that. I do think the key inquiry here, and I don't want to get too hung up on what statutes the court should be considering now. We have the video. The video, I think, frames how this accident occurred pretty clearly. And you agree that the scooter was traveling in the lane that the scooter is supposed to be traveling in, that is to the far right near the parked cars. Is that correct? Yes. Under the VTL, the scooter should be at the rightmost portion of the road. We are not disputing that it's not positioned in the section of the roadway that it should be. And there's also, as I understand, no claim that it was exceeding the speed limit, right? No, there's no claim that the scooter was speeding. I mean, given the fact that we have the split-second timing here, it's awfully close, it seems. Why would this not go to a fact finder to then decide whether the proximity was such as to give rise to danger of collision or, in the words of 1141, whether the scooter was so close as to constitute an immediate hazard? It's an awfully close question. And I guess that the so close would depend on speed and who had time to stop and, you know. Our counter would be that, I believe it's under Carriers v. Grove, which is cited by counsel and also, I believe, is cited at the lower court level. A driver has only seconds to react, which should not be held liable for an accident. And here, I think the video clarifies that this accident did occur in a matter of mere seconds. That's after the collision has become, the possibility of a collision becomes apparent. But as far as your argument, as far as making the left turn is concerned, there, well, I guess this is a fact question. Where was the scooter at the moment your client decided, started this left turn? My understanding is the scooter was still back a bit, not approaching the intersection. But is that correct? It was moving towards the intersection but wasn't about to go into it. That is correct. And I believe that's around the second, 35-second or 36-second mark. You can see that the scooter is still, as we referenced in our papers, one to two car lengths away when our driver enters the intersection. But that's sort of not a relevant point, right? I mean, that he wasn't in the intersection because if, I'm going to assume that 1141 applies, the left-hand turning car has to yield either, one, if there is a vehicle that's within the intersection, which concededly the scooter was not, or alternatively if the scooter was, quote, so close as to constitute an immediate hazard. So you can say, well, one or two car lengths away doesn't matter, right? Well, it depends on the speed at which the scooter is traveling. And if it's a normal rate of speed for that lane, then one or two car lengths away is nothing. I mean, if I'm turning left on a road where there's a 45-mile-hour speed limit and I see a car approaching that's three car lengths away, I'm nuts if I turn left. Because, of course, that car is going to hit me. And, of course, it's going to hit me on the side, maybe even on the back, because I've cut off the car. But it's still my fault. If the car is traveling at such a distance and such a speed that there is an immediate hazard, right? And if you're going in a place that it's a two-mile-an-hour speed limit, then maybe, yes, the approaching traffic has to be closer for it to constitute an immediate hazard. But if I'm cutting across a highway that has 75-mile-an-hour, the person could be, I don't know, 25 car lengths away and I still shouldn't turn. So I'm not sure the whole one-and-a-half car lengths thing is particularly persuasive here because we've seen that at that distance, he had impact with the car. So that's kind of, by definition, it suggests to me it was an immediate hazard. Because they did hit at that rate and at that distance. Here would be my counter. So based on the video, we have our driver entering the intersection after seeing that the white van opposite him is at a complete stop. Driver waits about three or four seconds, enters the intersection. Based on his deposition testimony, he says that he looked both ways, left and right, while executing his turn looking for traffic, specifically bicyclists and pedestrians, because he's aware that it's a school zone and this could happen. Even looking this way, he still does not see this. But that doesn't really determine. I mean, maybe that just determines that his view is blocked. But we know from the video that the scooter was, in fact, there. Right? He can say, oh, I didn't see it. Now, if we didn't have a video and that were the only evidence, then maybe you would have a case to say, well, the scooter wasn't close enough. But we know the scooter was close enough because we have the video. Now we're just talking about whether he could see it or not. I don't know. It just seems to me when you're turning left, the idea is you inch into the intersection. You keep peeking around the car to make sure there's nobody there. But we know he was there. The issue that dovetails with this, as the panel correctly noted before, is that this accident occurred, one, while the driver was exiting the intersection, our driver was exiting the intersection, and the scooter made contact with the rear rightmost portion of that. And that happens when you cut people off. Right? I mean, if you cut people off by making a left turn before you should, it only depends on how close they are, whether they hit your front or they hit your back. You know, either way. I mean, maybe you cut them off a little earlier or a little later, but you could still be cutting them off. And I say cutting them off in the sense of failing to yield them right away. I mean, that just depends on how bad your turn was. It does go to proximate causation, though. It shows that Mr. Valdez, our driver, merely furnished the occasion for the accident. He was not a substantial factor. A substantial factor was Mr. Rubin heading towards the intersection at the same rate of speed and not taking any steps to stop or slow down or not taking any evasive maneuvers to avoid hitting the rear of that vehicle. Okay. When Valdez got into the intersection, and you say that at that point Rubin was about two car lengths back, when he started, after he made the decision and started his turn into the intersection, at that point, who had the right of way? Mr. Valdez had the right of way. And that's under Rule 139? 139 and the case law supporting it, namely on Nose v. DiRamondo and Carroll v. Nicholson. Right. So once he had the right of way, what's the obligation or the duty on the part of Rubin? Is it to yield? Yes, it is to yield, and he also has a common law duty to see what is there to be seen. And nobody really saw the other here in that sense because of the white van, right? So we're sort of operating on the basis of what would have been reasonable here, I think, just in terms of the gut feeling, what would have been reasonable here. And after your client had made the turn, was it – and your client never saw Rubin, there was nothing really for him to avoid at that point if he had the right of way after he – because he never saw Rubin. So it sounds subjective, but we're reading these statutes kind of as if they're sort of from on high, objectively stating the situation. But so it seems to me that your client was through the intersection before he even knew that Rubin was – in fact, he didn't know that Rubin was there until the bike hit, right? That's correct. So, I don't know, did Rubin have a duty to yield? I should be asking your honor this. Didn't he have a duty to yield going up to the intersection? As I believe was noted previously, the video does show that there are three vehicles at a standstill. One, the white van at the very beginning of the intersection. There are two cars behind him. These are all in Rubin's lane of travel. Under what you posit, yes, he should have seen that there was some – under what you mentioned, he should have seen that there is something warranting caution in approaching that intersection. But as Judge Nardini pointed out, if there have been two lanes of cars, would a car in the second lane have had a duty to slow down based solely on seeing the three stopped vehicles in the left lane? I'm sorry, can you repeat? If instead of a scooter accident, we had two lanes of cars that were proceeding along at the speed limit or so on, and the left lane had come to a stop for some reason, did the car in the right lane have an automatic duty triggered by that to stop? They would have a duty to at least be aware of their surroundings, take extra caution when approaching that intersection to see what is actually there, if there are any traffic conditions. Wait a minute, but who's got the right of way? Let's put it that way. Doesn't the left-turning car still have to yield the right of way under 1141 and make sure that they have to yield to whoever is proceeding in the right lane? If they are aware of an immediate hazard. No, no, why do they have to be aware of it? They have to make sure. They have to yield the right of way. They have to look out to make sure there's no one. They have to make sure there's nobody in the right lane whizzing along. I mean, this is an exceptionally common experience I would think for all of us, right? I'm trying to turn left. There are two lanes of oncoming traffic. The lane, the oncoming lane closest to me is stopped for whatever reason. Maybe a courteous driver, right, flashes his lights. He's going to let me go. I can't just whiz through because I know there's a second right-hand lane of people who may not be courteous, and they could be going along at the speed limit, 25 miles an hour. I have to nose past that first driver who's courteous and keep craning my neck to look around and make sure that the other people in the right lane are willing to stop. And so many times they're not. And, right, that's what holds up all the traffic is you're waiting, you're waiting. So to go back to the question I asked the other side, is this a fair analogy? Because it strikes me that if we assume the scooter is lawfully in its lane, it seems it is no different from a second lane of oncoming traffic of people who are proceeding at a normal speed. And the only problem here is that so many of us, like your opposing counsel suggests, are not used to looking out for scooters and probably more often bicyclists. And he forgot or he didn't see. He assumed cars were stopped. He didn't see anything else, and he went. But nowadays, don't we have an obligation to stop for cyclists and scooters? So I know that was a long coda, but tell me whether the analogy holds. Is this the same analysis we have to engage in with a scooter in a car lane as if there were two lanes of oncoming car traffic? I don't think the analogy is directly on point for us. So, yeah, good. So tell me why not. Well, one, and just to clarify, I want to be clear in this case, our driver was already in the intersection. No, no, no, I'm talking about the scenario of who has the right of way and who has to yield the right of way. Once there is a driver in the intersection, any traffic heading towards the intersection has an obligation to yield. Even under 1141, if that car, again, in my example, the car in the right, well, I guess here's the thing, the car in the right lane that's whizzing towards the intersection as the person is turning left, it strikes me that the left-turning car has to yield if the oncoming car is so close as to constitute an immediate hazard. And then it becomes a question of whether they're too close. So if the car is way back, you know, a mile away, and you know you can clear the intersection, then, yeah, the left turn can be made. But if that car is coming along at 25 miles an hour and there are only three car lengths away, you can't turn left because they're going to hit you. And maybe they're going to hit your rear quarter panel, but they're going to hit you. So you as the left-turning car, you've got to stop under 1141, right? And I'm asking, is the analysis any different when you have an ongoing scooter in the same lane or an oncoming car in a second lane of car traffic? So is the analysis different there? I believe the analysis still is different. So tell me what's the difference in the analysis between the scooter in the same shared lane and a car in a second lane, because I get you're saying, well, it's far enough away, he wasn't constituting an immediate hazard, all that. But that sounds like we're applying the same analysis and we're getting into the facts of this case. We still have to be mindful of the common law duty. Sorry, not duty, but there's still a common law issue of when a driver has only seconds to react to a situation. No, that's what I'm saying. What's the difference between the scooter analysis and the car analysis? Are you saying the common law applies differently in these circumstances? Well, no. If you're saying you win whether it's a car or a scooter, I think you're saying the analysis is the same. But given the fact you win, I'm trying to ask you about the legal framework. Is the legal framework different if it's a second lane of oncoming car traffic or whether it's a scooter lawfully within the same lane? I apologize. I got confused by the application of the facts. The analysis would be the same. Okay. And I think I asked a lot of complicated questions, so it's not on you. I just want to be clear on one thing. You can achieve the right-of-way, but then you may have a duty to yield after you have the right-of-way if you can avoid the accident. If it's avoidable. If it's avoidable. So I don't know whether, I mean, once if you make a left turn, believing that it's safe to do so under the circumstances, any reasonable person would think it would be safe to do so, then you could have the right-of-way, but then you'd still have a duty to yield if you could, right, to avoid an accident. There are two levels of duty here. One is the duty to look around before you make the turn, and the other is to yield if you have the right-of-way, you're into the turn, and people would, that would be apparent. You still have the duty to avoid the accident if you can. Is that accurate? I believe that's accurate. You have the duty to avoid the accident. That being said, the fact that the accident occurs doesn't necessarily mean that you are liable for the accident. I understand that. I'm not saying that he should necessarily be doing here because you have a duty to yield, but if you can't, if you don't know why you should yield, because you can't see it or you haven't been able to see it until you've gotten all the way into it, through your intersection, under my hypothetical, with the right-of-way to make the turn, this is a friendly question. You get into the turn, then you have a duty to yield if possible, and you might argue, well, that's true, but my client didn't have it. That possibility was not open to my client. All he could do was, all he did was just follow his nose to go through the intersection. He didn't see anybody, didn't see a problem, and so in that sense, there might be a difference between a car and a scooter in the right-hand lane going forward. A car didn't see the scooter, couldn't see the scooter, never saw the scooter, whereas with another car there, I would assume that you'd be able to see all of the cars. It would be more likely that you would see the approaching car. I haven't actually put a question. He's going to ask a question. One time a colleague of mine made a statement like that, and I said to my colleague, is there a question attached to that, and he said, no. But anyway, to me it's not a separate case. Maybe it's something for you guys. Either of you see it this way, but that may be a sign that maybe it ought to go to the trial, in fact. Okay. I think we have kept you up here a long time. Thank you for that. Mr. Rosenberg, we'll give you two more minutes, but having detained both counsel for such a long time, we're going to keep it to a very tight two minutes maximum. If there's anything you want to add. Thank you, Your Honors. I'll just say that even if we say we didn't preserve 1141, we don't need to get to that because we know, we believe it's clear that under 1163, which creates the controlling duty, a turn is prohibited unless and until such movement can be made with reasonable safety. The turn never should have occurred, should have waited until, as he testified to in his depositions, Mr. Valdezzi said he couldn't see, actually, behind the white van. Well, that's true, but that can't necessarily apply here because if it's reasonable safety, it's a turn to be made, a written turn, and if it, under the objective test of reasonableness, it could be a safe turn. There's no reason to think, knowing what Mr. Valdez knew at the time, that there was any danger. And it could not have been reasonably or safely made under New York law, given the fact it allows the scooter, it allows the bike, it allows these individuals, Your Honor, and that's what we're saying ultimately. We're also saying that the government's conceded that common law exists here. The government's conceded 1141 doesn't need to be preserved. They said the VTL is not the focus here. It needs to be the focus of the video. Maybe there needs to be a scooter-specific law. There should be, Your Honor. I agree with that, but the law is the law, and I appreciate the panel's time. Thank you very much. All right, thank you both. Very interesting, and I think the one thing we can safely say from the bench is not simple case. We don't see many traffic accident cases up here, but we very much appreciate everything you've done to assist us in oral argument. We will take the case under advisement.